LEWIS, HAIGHT and BRADLEY, JJ., concurred.

So ordered.

---

THE PHŒNIX INSURANCE COMPANY and JOHN YORK, Jr., Respondents, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — fire caused by locomotive sparks — proof of defects confined to one locomotive — submission of the case to the jury.*

When, on the trial of an action brought to recover from a railroad company the damages to a building caused by fire, alleged to have resulted from the negligent defective construction, repair or operation of one or more of the defendant's locomotive engines, allowing large sparks to be emitted therefrom, it is shown that several engines passed the building shortly before the fire occurred, but all the evidence upon the question of defective construction, repair or operation, and of the emission of large sparks, is confined to one designated engine, so that if all the evidence relating to that engine were eliminated no case against the defendant would remain, it is an error, fatal to a verdict for the plaintiff, for the court to instruct the jury to the effect that there was evidence in the case upon which the defendant might be charged with actionable negligence in connection with other engines.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an order made at the Wayne Circuit and entered in the office of the clerk of Wayne county on the 23d day of November, 1892, denying the defendant's motion for a new trial made upon the minutes, after a verdict had been rendered in favor of the plaintiffs, with notice of an intention to bring up for review an order entered in said clerk's office on the 12th day of December, 1892, granting an extra allowance to the plaintiffs.

*E. Harris*, for the appellant.

*Wm. N. Cogswell*, for the respondents.

Dwight, P. J.:

The action was to recover damages, for the destruction by fire, of a malt house and its contents, at North Rose in Wayne county, owned by the plaintiff York and insured by the plaintiff, the Phœnix Insurance Company and its assignors.    It was alleged that the fire resulted from the negligent construction, repair or operation of one or more of the defendant's locomotive engines, employed by it on the line of the Rome, Watertown and Ogdensburgh railroad, whose tracks ran near the property destroyed.

The case for the plaintiff was made out, as is usual in such cases, by evidence to the effect that a locomotive engine, which passed the malt house shortly before the fire was discovered, emitted sparks or burning cinders so large that they could not have passed through the meshes of a properly constructed spark arrester in good repair. The engine, to which all the testimony of this character related, was the one known as No. 14, " a diamond stack " engine, and was drawing a freight train to the east.    There was also some attempt on the part of the plaintiffs to show that the diamond stack is not so effective and reliable, as a spark arrester, as the " extension front."    The latter proposition was controverted by the defendant, and evidence tending to show that the spark arrester of engine No. 14 was either of defective construction or out of repair was met by evidence to the effect that the smoke stack of engine No. 14 was inspected by several persons immediately (or soon) after the fire and was found to be of the most approved construction of its class, and in perfect repair.    Here was the conflict of evidence — on the one hand the testimony of several witnesses that they saw burning cinders in the air from this engine as large — variously — as cherries, as pigeon's eggs, as butternuts, " as big as your thumb ; " and on the other hand, the testimony of as many witnesses, of equal credibility, so far as the record shows, to the effect that there was at the same time, in the smoke stack of the same engine, a screen which must have absolutely prevented the escape of sparks or cinders of far less size than those described, and which was fully up to the requirements of care and diligence on the part of the defendants.    It seems that the evidence of the first description above given impressed the jury as being the more probable and worthy of credit, and, accordingly, the plaintiffs had a verdict.

We deem it unnecessary to review this verdict on the evidence because of what we regard as a manifest error in the submission of the case to the jury.

As may appear from the statement already made, the plaintiffs' case depended mainly, if not wholly, upon evidence of the size and quantity of the sparks or burning cinders emitted from the smoke stack of the engine by which fire was communicated to the building, and, as we have already intimated, evidence of that character was confined to the case of the diamond stack engine No. 14. The fire occurred on the evening of May 14, 1891, and was first discovered on the roof of the malt house between half-past eight and nine o'clock. Three trains of the defendant passed the station at North Rose, which was near the malt house, between eight and nine o'clock that evening. The first was a freight train drawn by extension front engine No. 19 going east at five minutes past eight. The next was the train drawn by engine No. 14, which arrived from the west at eight-twenty-five and ran east, past the malt house, onto a side track, and there waited for a passenger train which went by at eight-thirty-nine, immediately after which it backed up, again past the malt house, onto the main track, and then pursued its journey to the east. There is no possibility of mistake in identifying engine No. 14 with the engine which is described as emitting sparks of extraordinary size and quantity. All the evidence on that subject concurs in doing so. There is no mention of any sparks or fire from engine No. 19, and of the passenger engine it is only said, by one witness, that he noticed "a little bit of fire from her," which, in the absence of further description, may be presumed to have been the minute incandescent particles which may commonly be seen in the smoke of a locomotive engine at night. It was the engine of the freight train which ran onto the siding and waited for the passenger train, which followed the passenger train to the east, which was the last engine to pass before the fire was discovered, which passed fifteen or twenty minutes before the alarm was given, this was the engine, and the only one, concerning which any evidence was given which tends, in any degree, to charge the defendant with negligence in respect to its construction or repair or management; and this was, beyond dispute, engine No. 14. This was the engine which was described as "laboring" with its burden

as it pushed and drew it back and forth on the siding and the main track, and as emitting large sparks in doing so, and it was the engine which returned from Wolcott on the telegraphic summons of the agent at North Rose and brought the fire company from the former place, some of whom testified to sparks emitted by it on the return. Moreover, if anything was to be claimed for the plaintiffs' case, on the ground of the inferiority of the diamond stack to the extension front, No. 14 was the only engine against which that claim could be made.    Indeed, so manifest was it that the plaintiffs' case related solely to engine No. 14, that the defendant, very properly, gave no evidence at all in respect to the actual condition or management of either of the other engines mentioned.

Such being the state of the case, the counsel for the defendant requested the court to charge the jury "that if they find that this malt house was destroyed by fire from a locomotive, but they are not able to decide that the fire was caused by engine No. 14, then and in that case the plaintiffs cannot recover." This the court declined to do, but on the contrary instructed the jury as follows: "If you find that this malt house was burned by reason of sparks escaping from the defendant's engines, or any one of them, providing, as I said before, it was done negligently, then the plaintiffs are entitled to recover." And the court was further requested to charge "that there is no evidence imputing negligence to any particular engine except No. 14." This request was also refused, and the defendant duly excepted to the several rulings.

These exceptions, we think, were well taken and were ground upon which the motion for a new trial should have been granted. The several refusals to charge and the instruction actually given, whether taken together or separately, plainly imply, and, in effect, instruct the jury, that there was evidence in the case upon which the defendant might be charged with actionable negligence in connection with either or both of the engines above mentioned, other than engine No. 14. A fair test of the correctness of such an instruction may be applied by supposing that engine No. 14 and all the evidence relating exclusively to it were eliminated from the case; it will not be contended that any case against the defendant would remain.

The instruction may well have been to the prejudice of the

defendant. It opened the door for conjecture on the part of the jury, and enabled any juror who was not satisfied to discredit the direct evidence, given by the defendant's witnesses, as to the actual condition of engine No. 14, to argue " but no such evidence is given in regard to either of the other two engines, and if the fire was not communicated by No. 14, it must have been by one of them, and the defendant is still responsible." The fault of such reasoning is that if the fire was communicated by either of the other engines, it happened — so far as the evidence shows — without negligence of the defendant; and the fault of the instruction complained of was that it assumed, contrary to the fact, that there was evidence of negligence in connection with the engines other than No. 14.

For the error thus pointed out we are of the opinion that the order denying the defendant's motion for a new trial should be reversed.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Order denying motion for new trial reversed and new trial granted, costs to abide the event.